## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

Jason B. Lee,
4813 Chichester House Road
Olney, MD 20832

       Plaintiff,

  v.                                   Civil Action No.

William P. Barr, Attorney General of the
United States, United States
Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

       Defendant,

---

## **COMPLAINT**

      NOW COMES Plaintiff, Jason Lee, ("Plaintiff", "Lee") by way of his attorney, Morris E. Fischer, Esq. and brings action against the U.S. Department of Justice ("DOJ") herein referred to as "Defendant" for reasons therefore states that at all times mentioned in this complaint:

1.      This action is brought under Title VII of the 1964 Civil Rights Act,42 U.S.C. Sec. 2000e et seq., as amended. Plaintiff brings this action against his former employer for discriminatory actions, based upon his race and national origin, the result of which caused his termination.

2.      Jurisdiction of this Court is invoked pursuant to 42 U.S.C. Sec. 2000e.

3.      Venue in this district is appropriate because the acts of discrimination alleged occurred in Washington, DC where Plaintiff was employed by Defendants.

4.      Plaintiff has exhausted all required administrative procedures for pursuing his complaint of discrimination.

## PARTIES

5.    Plaintiff, Jason B. Lee is a former Senior Intelligence Officer employed by the Federal Bureau of Investigation Technical Intelligence Directors Office in Washington, D.C.

6.    Defendant William J. Barr is the Attorney General of the United States and head of the Department of Justice.

7.    Defendant Department of Justice is a federal department charged with enforcing the laws of the United States and oversees the Federal Bureau of Investigation.

8.    The Federal Bureau of Investigation is the chief investigative and law enforcement arm of the Department of Justice and the former employer of the Plaintiff.

9.    Defendant's agents are certain employees, supervisors, investigators, polygraph examiners employed by the Security Division, Polygraph Unit and other such divisions of the Department of Justice or FBI responsible for administering polygraph examinations and conducting security investigations on individuals who have or are seeking security clearances, whose names are currently unascertained.

10.    Defendant Barr is the Attorney General of the United States, named in his official capacity pursuant to 42 U.S.C. § 2000e-16.

11.    Defendant does business and is located in the District of Columbia.

12.    Defendant Barr is properly named as the head of the Agency pursuant to 42 U.S.C. § 2000e-16(c).

13.    Plaintiff has filed timely complaints of discrimination and retaliation with his federal employer and more than 180 days have passed since the filing.

14.     Therefore, this court has jurisdiction over these claims under 42 U.S.C. §§ 2000e–5 & –

16 (2012).

## BRIEF STATEMENT OF FACTS

15.     Plaintiff entered service with the FBI on August 10, 2003.

16.     His most recent position with the Bureau was as a Senior Intelligence Officer-Technical

Intelligence, assigned to the Directorate of Intelligence.

17.     As part of his employment the Plaintiff held a Top Secret Security Clearance.

18.     Plaintiff, who was born on March 10, 1978 in the United States, is of Chinese ancestry.

19.     Plaintiff's parents, are both U.S. citizens, mother was naturalized from Hong Kong, at

that time a British province; father has "derived citizenship status" as the son of a U.S Army

soldier/World War II veteran.

20.     Plaintiff's father was employed for 30 years with the Department of Energy and is not a

government contractor.

21.     The Plaintiff is a graduate of Georgetown University and Johns Hopkins University

holding both a B.S. degree in Business Administration and financial engineering and a Masters

Degree in Global Security Studies.

22.     Plaintiff started his career with the FBI as a Forensic Financial Research Specialist in the

Analytical Integration Unit of the Security Division, eventually being promoted to his most

recent position.

23.     Plaintiff has served the FBI with distinction and without incident since 2003.

24.     Plaintiff was rated successful in his 2010 Performance Appraisal Report and outstanding

on his 2011 and 2013 reports.

25.     Plaintiff received three individual time off awards in 2004, 2006 and 2007; a group time off award in 2005 and an individual cash award in 2008.

26.     Plaintiff has held a security clearance since 2003 without incident.

27.     Prior to 2013 the Plaintiff had undergone two mandatory FBI polygraph exams as part of the security clearance investigative process.

28.     The first polygraph was in 2003 as part of his pre-hire evaluation process.

29.     The second polygraph was in 2008 during Plaintiff's periodic renewal investigation.

30.     Upon information and belief the Plaintiff passed both of these polygraph exams without incident or concerns as the Plaintiff was initially granted and subsequently retained his security clearance.

31.     Plaintiff was notified that there had been heavy breathing on his 2008 exam but that, apparently, did not raise any significant concerns.

32.     Plaintiff at no time has ever reviewed any documentation or videos regarding polygraph examination countermeasures and has never intentionally searched for information on how to beat any such examination.

33.     Plaintiff disclosed to the examiner in 2013 that he had read peer reviewed research regarding polygraph examinations in general, as part of his job research, specifically a 2002 report from the National Academy of Science commissioned by President George W. Bush.

34.     In July of 2013 the Plaintiff was contacted by the Security Division regarding the scheduling of his ten-year routine periodic polygraph exam for the second week of September, 2013.

35.     This exam was conducted by a SSA Kevin McCaskey, who upon information and belief specialized in criminal investigations not routine periodic security clearance review exams.

36.    During the examination the Plaintiff was advised by McCaskey that there were problems repeatedly arising in his response to three questions relating to the unauthorized release of information, terrorism and failure to disclose a security violation.

37.    After several runs of the questions McCaskey outright accused the Plaintiff of lying to him and trying to conceal relevant information from him.

38.    Plaintiff vehemently denied this repeatedly and this back and forth with McCaskey went on for nearly two hours.

39.    During this time the demeanor and attitude of McCaskey, as perceived by the Plaintiff, appeared to be one of bias and antagonism on the part of McCaskey towards the Plaintiff because of the Plaintiff's Chinese ancestry.

40.    At the end of the exam McCaskey demanded that the Plaintiff give a written statement of explanation for his failure and refused to let the Plaintiff leave until he provided one.

41.    Plaintiff eventually provided a written statement that denied any wrongdoing on his part, denied withholding any information or employing any testing counter measures.

42.    It wasn't until nearly one year later that the Plaintiff heard anything further on his examination from the Security Division.

43.     In August of 2014 Plaintiff was notified by the Analysis and Investigation Unit that he needed to take a second polygraph examination which was scheduled for September 24, 2014.

44.    This second examination was conducted by a different examiner, Special Agent ("S.A.") Shannon.

45.    S.A. Shannon informed the Plaintiff that he had reviewed his file and been briefed on the failed/untruthful results of the 2013 examination, indicating potential coordination between the examiners.

46.     It was during pre-test questioning that S.A. Shannon made certain remarks that not only exacerbated the Plaintiff's anxiety about the test but were highly inappropriate and unprofessional.

47.     In particular, S.A. Shannon began a series of questioning regarding the Plaintiff's exposure to environments where others spoke primarily dialects of Chinese, even though the Plaintiff answered the first question of this series, "do you speak Mandarin or another dialect of Chinese?' with a response of "no".

48.     These remarks led the Plaintiff to conclude that this examiner, like S.A. McCaskey had an attitude and demeanor hostile to the Plaintiff due to his Chinese ancestry.

49.     S.A. Shannon, for example, chastised the Plaintiff for having read the 2002 National Science Academy Report, accusing him of reading up on the test.

50.     S.A. Shannon indicated to the Plaintiff that based on his interpretation of the technical results, he would be failing him on the test and said that the interpretation included a determination of use of "countermeasures".

51.     In S.A. Shannon's expert opinion, having greater number of breaths after answering a given question can only be explained by one cause, an attempt to cheat the examination.

52.     On the FBI's own accord, the Security Division would later submit Plaintiff's test results to the independent laboratory of the National Center for Credibility Assessment center for excellence.

53.     NCCA returned findings that no evidence was found of countermeasures.

54.     The FBI continued to pursue adverse action of security clearance revocation/employment termination regardless.

55.     S.A. Shannon also suggested that the Plaintiff and his father, a 30 year government employee, were part of a father and son spy team, after taking note that the Plaintiff had been read into a Q Clearance and had done a number of projects with the DOE.

56.     This behavior and conduct by S.A. Shannon set the Plaintiff for another failed test, causing the Plaintiff to suffer a "panic attack" during the test.

57.     S.A. Shannon further exacerbated the matter by warning the Plaintiff that his attempts to counter the test warranted the taking of Plaintiff's badge immediately.

58.      S.A. Shannon's inference that he had the sole authority to confiscate credentials was later learned by the Plaintiff to be not true.

59.     The Plaintiff was then demanded to write a statement explaining his failure of the test and admitting his wrongdoing.

60.     Plaintiff reluctantly wrote a statement, which S.A. Shannon "rejected" by crumpling it up and telling the Plaintiff t was too technical and unless he rewrite the statement under S.A. Shannon's guidance explained "whatever he was hiding" the "people in the back room" will have no choice but to open a counter intelligence investigation on him.

61.     S.A. Shannon in particular criticized the Plaintiff as "you science people" always write too technical.  The FBI produced the subsequent written statement but not the crumpled first submission; previous requests to produce it were ignored.

62.     On 12/31/2014 the Plaintiff was advised by letter that his security clearance was being suspended indefinitely and he was being placed on unpaid leave.

63.     Plaintiff was not afforded an opportunity to appeal this decision or the option of a post adjudication risk management plan before the suspension was made effective, a violation of CFR and written policy/a FBI Electronic Communication requiring any employee accused of failing a

routine polygraph to be granted a Senior Review Panel hearing before any adverse action is taken.

64.     This same policy document clearly states that unfavorable polygraph results by an employee alone cannot result in adverse action.

65.     The FBI violated multiple mandates of its own policy and federal law.

66.     On 2/25/15 the Plaintiff was notified that his security clearance was being permanently revoked.

67.     Plaintiff subsequently appealed this decision which was denied by the Assistant Director of the Security Division.

68.     The only basis for both the suspension and final revocation of Plaintiff's security clearance was a violation of the Personal Conduct Policy as it related to his failure of the polygraph examination, his employment of suspected counter measures.

69.     No other evidence of misconduct or wrongdoing by the Plaintiff has ever been put forth by the Defendants.

## CLAIMS

### I.     NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII

70.     Plaintiff realleges and re-avers all prior paragraphs as set forth herein.

71.     Defendant's Polygraph examiners conduct during the polygraph examinations resulted in failed examinations of Plaintiff.

72.     The results of the polygraph examinations were and are the proximate cause of the revocation of the Plaintiff's security clearance and subsequent termination of his employment with the FBI.

73.     Defendant's conduct in the manner in which they administered the polygraph examinations was not within generally accepted guidelines for administration of the polygraph.

74.     Defendant's conduct in the manner of conducting interview practices was not within generally accepted guidelines for same.

75.     Plaintiff is of Chinese-American national origin, U.S. citizen by birth.

76.     Other similarly situated employees not of Plaintiff's national origin were not subject to the same conditions of employment as Plaintiff.

77.     A causal connection exists between Defendant's discriminatory actions and Plaintiff's national origin.

78.     Plaintiff's national origin was the motivating factor for Defendant's aforementioned actions against Plaintiff.

79.     Defendant's actions constituted a violation of Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000(e) et seq.

80.     Defendant's conduct was malicious, willful, and intentional.

81.     Plaintiff has suffered substantial economic, reputational, and compensatory damages as a result of Defendants actions.

82.     Plaintiff has also suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, depression, insomnia, and other damages as a direct result of Defendant's acts and omissions.

## II.     RACE DISCRIMINATION IN VIOLATION OF TITLE VII

83.     Plaintiff realleges and re-avers all prior paragraphs as set forth herein.

84.     Plaintiff is of the Mongoloid Race.

85.    Other similarly situated employees not of Plaintiff's race were not subject to the same conditions of employment as Plaintiff.

86.    A causal connection exists between Defendant's discriminatory actions and Plaintiff's race.

87.    Plaintiff's race was the motivating factor for Defendant's aforementioned actions against Plaintiff.

88.    Defendant's actions constituted a violation of Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000(e) et seq.

89.    Defendant's conduct was malicious, willful, and intentional.

90.    Plaintiff has suffered substantial economic and compensatory damages as a result of Defendants actions.

91.    Plaintiff has also suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, depression, insomnia, and other damages as a direct result of Defendant's acts and omissions.

## **RELIEF REQUESTED**

WHEREFORE, the Plaintiff requests that this Court grant him the following relief:

1.    That the Court enter and order declaring that the Defendant has violated Plaintiff rights under Title VII;

2.    That the Court issue an order directing the defendants to reinstate the plaintiff to the position he would have held were it not for the discrimination against him and him full back pay and other benefits related to his employment;

3.    That the Court order the Agency to pay compensatory damages, including but not

limited to, lost back pay, plus interest, lost fringe benefits and future lost earnings and fringe benefits, damages for emotional distress and pain and suffering, according to proof allowed by law;

4.      That the Court grant Plaintiff compensatory damages for the humiliation, emotional distress, and other damages caused by Defendants' conduct;

5.      That the Court grant Plaintiff all employment benefits he would have enjoyed had he not been discriminated and retaliated against;

6.      That the Court grant Plaintiff expenses of litigation, including reasonable attorneys' fees;

7.      That the Court grant Plaintiff an award of prejudgment and post-judgment interest;

8.      That the Court grant Plaintiff all other relief the Court deems just and proper.


## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues to which he is entitled to a jury trial under law.


*Morris E. Fischer, Esq./s/*
Morris E. Fischer, Esq.
Morris E. Fischer, LLC
8720 Georgia Avenue, Suite 210
Silver Spring, MD 20910
301- 328-7631 Office
301- 328-7638 Fax
Attorney for Plaintiff