UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON B. LEE, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| WILLIAM P. BARR,<br>U.S. Attorney General, | )<br>)<br>) |
| Defendant. | )<br>) |

Civil Action No. 19-2284 (DLF)

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
## AND OPPOSITION TO MOTION TO AMEND COMPLAINT

Defendant, U.S. Attorney General William P. Barr, respectfully opposes Plaintiff's

motion to amend his complaint.  ECF No. 12.  Plaintiff's original complaint attempts to bring

claims of workplace discrimination and retaliation under Title VII of the Civil Rights Act.  ECF

No. 1.  After Defendant moved to dismiss the complaint, ECF Nos. 6, 8, Plaintiff moved to

amend his complaint, ECF Nos. 12, 13.  The proposed amended complaint adds factual details to

the previous claims, new legal theories, and new defendants.  ECF No. 12-3.  The Court should

deny leave to amend as futile because all of the previously identified defects persist in the claims

that Plaintiff  proposes to retain in his proposed amended complaint, and the newly added claims

(against both the existing and proposed new defendants) suffer additional clear defects that make

them unable to withstand dismissal.  Defendant raises the most glaring of these defects here,

specifically that Plaintiff failed to exhaust his administrative remedies; Plaintiff's constitutional

claims against the United States are barred by the doctrine of sovereign immunity, Title VII

exclusivity, and Plaintiff's failure to allege a protected liberty interest; and that a *Bivens* remedy

is clearly unavailable here.  Plaintiff's motion for leave to amend should therefore be denied, and Defendant's motion to dismiss the current complaint should be granted.

## BACKGROUND

### I.   Plaintiff's EEO Complaint

Plaintiff first contacted an Equal Employment Opportunity ("EEO") counselor on June 14, 2018, alleging that he had been subjected to discrimination based on his race and alleged disability during an April 26, 2018, polygraph reexamination and when the revocation of his security clearance was affirmed.  ECF 8-1 at 1-2.  Thereafter, on July 20, 2018, Plaintiff filed a formal Complaint of Discrimination ("Formal EEO Complaint") with the FBI's Office of Equal Employment Opportunity Affairs ("OEEOA").  *Id.* at 6 (Final Agency Decision).  Plaintiff's Formal EEO Complaint asserted only that he was discriminated against based on his race (Asian/Chinese ethnicity), physical disability, and reprisal for engaging in protected EEO activity when:

1) On April 26, 2018 he was not accommodated during his polygraph re-examination, and the examiner made oral remarks about his Chinese ethnicity; and

2) He was notified on June 1, 2018, that the revocation of his Top Secret Security Clearance was affirmed.

*Id.*

On October 18, 2018, DOJ issued a Final Agency Decision dismissing Plaintiff's discrimination claims.  *Id.*  The Final Agency Decision found Issue 1 as untimely because Plaintiff failed to contact an EEO Counselor within 45 days of the alleged discriminatory action, i.e., the April 26, 2018, polygraph examination.  *Id.* at 7.  The Decision found that Issue 2 failed to state a claim because the Equal Employment Opportunity Commission does not have

jurisdiction to review an agency's determination with regard to either the substance of security clearance decisions or as to the validity of the clearance requirement itself. *Id.* at 8.

## II.    Plaintiff's District Court Complaints

Plaintiff filed this civil action on July 31, 2019.  ECF No. 1.  Plaintiff's original Complaint named one defendant—Attorney General William P. Barr, as Attorney General of the United States Department of Justice—and included only two claims:  a claim for national origin discrimination in violation of Title VII and a claim for race discrimination in violation of Title VII.  *See* ECF No. 1 ¶¶ 75-79; 84-88 (asserting claims based on his national origin (Chinese-American) and race (Mongoloid)).  Both claims arose from events related to Plaintiff's September 2013 and September 2014 polygraph examinations.  *See generally id.* ¶¶ 32-91. Plaintiff's original Complaint contains no allegations regarding the April 2018 polygraph examination.  *See generally id.*

Defendant moved to dismiss the Complaint on November 18, 2019.  *See* ECF Nos. 6, and 8.  The Motion to Dismiss argued that Plaintiff's Complaint should be dismissed in full because:

(i)    Plaintiff had failed to exhaust administrative remedies for *any* claims based on the September 2013 or September 2014 polygraph because he had never submitted any claim to the Agency's EEO office regarding these events, ECF No. 6-1 at 5-9;

(ii)   Plaintiff had failed to exhaust administrative remedies for any claim based on national origin discrimination because his EEO complaint failed to allege national origin discrimination with respect to any event, *id.* at 7;

(iii)  Plaintiff cannot establish a prima facie case of discrimination with respect to either the September 2013 or September 2014 polygraph because "Plaintiff's Complaint also does not establish that the requirement to take the polygraph, in and of itself, was an adverse action" within the meaning of Title VII, *id.* at 9-11; and

(iv)   Plaintiff cannot assert a claim based on the revocation of his security clearance because such claims are barred by *Dep't of Navy v. Egan*, 484 U.S. 518 (1988), *id.* at 11-13.

On January 6, 2020, before filing a response to the Motion to Dismiss, Plaintiff filed the instant motion to amend his Complaint.  *See* ECF No. 12.  Plaintiff attached to this motion a Proposed First Amendment Complaint (the "PFAC"), which outlines the new claims and defendants he seeks to add to this action, among other changes.  Plaintiff subsequently opposed Defendant's Motion to Dismiss in a one paragraph filing, which consisted only of Plaintiff's incorporation by reference of his Motion to Amend.  ECF No. 13.

Plaintiff's PFAC withdraws all claims based on the September 2013 polygraph but continues to assert claims based on the September 2014 polygraph.  *See* ECF No. 12-3.  In addition, the PFAC seeks to substantially broaden the scope of this action by adding eight new counts, new legal theories, and new individual defendants.  *See generally* ECF 12-3 (showing changes).  Specifically, Plaintiff seeks to add new Title VII claims, claims against the United States directly under the Constitution, and claims pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).  Plaintiff seeks to add as defendants Marie Barr Santangelo, who signed the May 2018 Access Review Committee letter revoking Plaintiff's clearance (the "ARC Letter"), ECF No. 12-1 at 6; ECF No. 12-2 at 1, ¶¶ 9, 170, and "Stacy Sabilla," who conducted the 2018 polygraph examination, ECF No. 12-1 at 4, 6; ECF No. 12-2 at 1, ¶¶ 9, 84-85, both in their individual capacities pursuant to *Bivens*.  Plaintiff notes that the PFAC identifies the newly named 2018 polygraph examiner by phonetic spelling.  *See* ECF No. 12-2 at 1.  In fact, his PFAC appears to attempt to name FBI Special Agent Stacy Smiedala, who conducted the 2018 polygraph reexamination described in the PFAC.  As such, the remainder of this Opposition will refer to the defendant referenced as "SA Sabillia" by his proper name—SA Smiedala.

**LEGAL STANDARD – RULES 12(b)(6) AND 15(a)**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted."  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted).  While courts accept as true all well-pleaded facts, they do not accept threadbare recitals of the elements of a cause of action, supported by conclusory allegations.  *See Iqbal*, 556 U.S. at 678; *Golden v. Mgmt. & Training Corp.*, 266 F. Supp. 3d 277, 281 (D.D.C. 2017) (citing *Twombly*, 550 U.S. at 555) (court need not accept a plaintiff's legal conclusions as true, nor must a court presume the veracity of the legal conclusions that are couched as factual allegations).

Rule 15 permits a court to grant leave to amend—after the time to amend as of right has passed, when "justice so requires."  The right to amend is not absolute, not even under the liberal standard that prevails in civil litigation.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also* Fed. R. Civ. P. 15(a); *Atchinson v. District of Columbia*, 73 F.3d 418, 425-26 (D.C. Cir. 1996).  A plaintiff may be denied leave to amend on such grounds as "bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."  *Foman*, 371 U.S. at 182.  Amendment of a complaint is futile "where the complaint as amended would 'not survive a motion to dismiss . . . .'" *Anderson v. Federal Bureau of Prisons*, No. 10-0413, 2011 WL 346079, at *1 (D.D.C. Feb. 3, 2011) (*quoting Jung v. Assoc. of Am. Med. Colls.*, 226 F.R.D. 7, 9 (D.D.C. 2005)).  "In other words, if the proposed amendment would still render the complaint deficient, courts need not

5

grant leave." *Bridges v. Lezell Law, PC*, 842 F. Supp. 2d 261, 264 (D.D.C. 2012) (*citing*, *inter alia*, *Foman*, 371 U.S. at 182); *see also In re Interbank Funding Corp. Secs. Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010) ("[A] district court may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss."); *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996) ("Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss."). Additionally, the Court need not grant leave to amend, "[w]here . . . the complaint, as amended, would radically alter the scope and nature of the case and bears no more than a tangential relationship to the original action." *Miss. Ass'n of Coops. v. Farmers Home Admin.*, 139 F.R.D. 542, 544 (D.D.C. 1991).

While "[l]iberality in amendment is important to assure a party a fair opportunity to present his claims[,] . . . equal attention should be given to the proposition that there must be an end finally to a particular litigation[,]" and a district court need not be "imposed upon by the presentation of theories seriatim." *Freeman v. Cont'l Gin Co.*, 381 F.2d 459, 469 (5th Cir. 1967) (citation omitted). When exercising its discretion to deny leave to amend, the Court need only base its ruling on a valid ground—such as futility—and explain its rationale. *See Foman*, 371 U.S. at 182.

## ARGUMENT

The Court should deny leave to amend because permitting Plaintiff to do so would be futile. The amendments to Plaintiff's existing claims would not allow them to survive Defendant's Motion for dismissal, nor would any of the new claims asserted in Plaintiff's PFAC survive a motion to dismiss. Thus, for the reasons set forth in Defendant's Motion to Dismiss and those further set out below addressing each count of the PFAC and the *Egan* issue broadly

applicable to the PFAC, the court should grant Defendant's Motion to Dismiss, ECF No. 6, and deny Plaintiff leave to amend.

## I.    Title VII Claims (Counts I – V)

### A.    Legal Requirement to Exhaust Administrative Remedies

Each count of Plaintiff's PFAC asserting Title VII claims (proposed Counts I-V) is subject to dismissal for failure to exhaust administrative remedies.  Title VII requires that before filing a lawsuit in federal court, a plaintiff must timely pursue and exhaust all available administrative remedies for *each discrete claim*.  *See* 42 U.S.C. § 2000e16(c) (Title VII); *Harris v. Gonzales*, 488 F.3d 442, 443 (D.C. Cir. 2007).  "Exhaustion is required in order to give federal agencies an opportunity to handle matters internally whenever possible and to ensure that the federal courts are burdened only when reasonably necessary." *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985).

Under Title VII, among the mandatory administrative requirements is that a federal employee or applicant who believes he has been discriminated against on the basis of a protected category must contact an EEO office counselor within 45 days of the alleged discriminatory event and must subsequently file a formal administrative complaint.  29 C.F.R. § 1614.105(a)(1); *Siegel v. Kreps*, 654 F. 2d 773, 776 (D.C. Cir. 1981) ("The principal exhaustion requirement is that the complainant must initially seek relief in the agency which has allegedly discriminated against him.").  The 45-day period to make contact with an EEO counselor begins to run when an employee has a "reasonable suspicion" of a discriminatory action.  *See Adesalu v. Copps*, 606 F. Supp. 2d 97, 102 (D.D.C. 2009).  When a plaintiff fails to exhaust the administrative process prior to bringing a lawsuit in federal court, his claim is subject to dismissal.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002);  *Gillet v. King*, 931 F. Supp. 9, 12-13

(D.D.C. 1996) (dismissing Plaintiff's Title VII claims for failure to exhaust his administrative remedies).

**B.    Plaintiff's Formal Complaint of Discrimination Did Not Allege Discrimination Occurred During the September 2014 Polygraph Examination (Counts I-II)**

The Court should deny Plaintiff's Motion to Amend as to Counts I and II because Plaintiff failed to submit the asserted claims to the Agency's EEO office prior to filing suit in this Court and, therefore, has failed to exhaust his administrative remedies.  The only two alleged agency actions upon which Plaintiff based his claims in the Formal EEO Complaint were:  (i) the execution of the April 2018 polygraph reexamination, and (ii) the June 2018 affirmation of revocation of his security clearance.  *See* ECF 8-1 at 1-2.  In contrast, Counts I and II of Plaintiff's PFAC allege that he was subjected to discrimination based on his national origin (Count I) and race (Count II) during the September 2014 polygraph examination.  *See* ECF No. 12-2 ¶¶ 108-136.

Significantly, although Plaintiff's Formal EEO Complaint makes a vague reference to "discrimination . . . faced . . . since 2014," Plaintiff's Formal EEO Complaint does not contain any allegations regarding the purportedly discriminatory actions that he now alleges occurred in September 2014, nor does it assert that Plaintiff wished to assert a discrimination claim based on agency actions that allegedly occurred in 2014.  *See* ECF 8-1 at 1-2.  In fact, Plaintiff *never* contacted an EEO Counselor, or filed a formal complaint of discrimination, based on *any* discriminatory actions alleged to have occurred during his September 2014 polygraph examination.  Accordingly, Plaintiff has failed to exhaust his administrative remedies for these claims and the Court should deny Plaintiff's Motion to Amend as to Counts I and II of the PFAC.  *See, e.g.*, *Bowe-Connor v. Shinseki*, 923 F. Supp. 2d 1, 7 (D.D.C. 2013) (dismissing

plaintiff's Title VII claim and issuing summary judgment for defendants because plaintiff's

allegations were not included in formal EEO complaint).

### C.     Plaintiff Did Not Contact an EEO Counselor Within Forty-Five (45) Days of the Actions Alleged to be Discriminatory (Counts I-IV)

The Court should also deny Plaintiff's Motion to Amend as to Counts I-IV because

Plaintiff failed to make contact with the EEO counselor within 45 days of the alleged

discriminatory acts.  As stated above, a federal employee who believes he has been discriminated

against on the basis of a protected category must contact an EEO counselor prior to filing a

complaint of discrimination for the purpose of attempting informal resolution of the

matter.  *See* 29 C.F.R. §1614.105(a).  Contact with an EEO counselor must be initiated "within

45 days of the date of the matter alleged to be discriminatory, or within 45 days of the effective

date of a personnel action."  29 C.F.R. §1614.105(a)(1).  Further, the United States Court of

Appeals for the District of Columbia Circuit has adopted a "reasonable suspicion" standard to

determine when the limitations period is triggered under the regulations.  *See Aceto v. England*,

328 F. Supp. 2d 1, 7 (D.D.C.  2004) ("This court applies the 'reasonable suspicion' standard, . . .

which starts the [45 day] time limit when the plaintiff has a reasonable suspicion that he has been

the victim of discrimination.").  If contact is not initiated within the requisite time limit, a

complaint filed thereafter by the employee is subject to dismissal.  *See* 29 C.F.R.

§ 1614.107(a)(2).

First, even if Plaintiff's Formal EEO Complaint could be reasonably read to include

claims based on his September 2014 polygraph – which it cannot – Counts I and II of Plaintiff's

PFAC still fail because he failed to make contact with the EEO counselor within 45 days of the

alleged discriminatory acts.  *See* 29 C.F.R. § 1614.105(a)(1).  Notably, the 45-day time limit for

Plaintiff to initiate contact with an EEO counselor began to run on the date that Plaintiff took the

polygraph because, based on Plaintiff's own allegations, he should have (or did) have a "reasonable suspicion" that discriminatory conduct had allegedly occurred on the date he took the polygraph.

Specifically, with respect to the September 2014 polygraph, Plaintiff's PFAC alleges that that the examiner "made certain remarks that . . . were highly inappropriate and unprofessional," including "a series of questioning regarding the Plaintiff's exposure to environments where others spoke primarily dialects of Chinese" and that "led the Plaintiff to conclude that this examiner . . . had an attitude and demeanor hostile to the Plaintiff due to his Chinese ancestry." ECF 12-2 ¶¶ 46-48.  Plaintiff's allegations reflect that, on the day of the polygraph testing, Plaintiff had concluded – or, at the very least, had a reasonable suspicion – that discriminatory conduct may have occurred.  Consequently, the 45-day time limit for Plaintiff to submit any claims related to September 2014 polygraph to the EEO counselor began to run on the date of the polygraph examination.

Despite having a reasonable suspicion of any alleged discriminatory conduct on the date that the conduct occurred, Plaintiff did not contact an EEO counselor until June 14, 2018, which was almost 4 years *after* the alleged discriminatory polygraph examination and over 3 years *after* the revocation of his security clearance.  *See* ECF 8-1 at 1.  Since the alleged action taken against Plaintiff during the September 2014 polygraph examination was a discrete discriminatory act, Plaintiff was required to contact an EEO counselor within 45-days of the alleged action; however, Plaintiff failed to make such contact and, therefore, Counts I and II fail to state a claim and the Court should deny Plaintiff's Motion to Amend as to Counts I and II of the PFAC.  *See Morgan*, 536 U.S. at 113 ("[D]iscrete discriminatory acts are not actionable if time barred . . . . Each discriminatory act starts a new clock for filing charges alleging that act. The charge,

therefore, must be filed within the [45]-day time period after the discrete discriminatory act occurred.").

Second, Plaintiff alleges in his PFAC that he was he was retaliated against (Count III) and subjected to discrimination based on his national origin (Count IV) and race (Count V) during his April 26, 2018 polygraph examination.  *See* ECF 12-2 ¶¶ 137-166.  As stated above, Plaintiff contacted an EEO Counselor on June 14, 2018, alleging that he experienced discriminatory treatment during the April 26, 2018 polygraph examination.  ECF 8-1 at 1-2. However, Plaintiff's contact with the EEO Counselor was forty-nine (49) days after the date of the polygraph examination alleged to be discriminatory and, therefore, was untimely.  *See* 29 C.F.R. §1614.105(a)(1); *see also Morgan*, 536 U.S. at 1.  Importantly, Plaintiff stated in his Formal EEO Complaint that he reasonably suspected discrimination occurred on April 26, 2018 – the date of his polygraph examination.  ECF 8-1 at 1.  Therefore, his contact with the EEO Counselor on June 14, 2018, was beyond the forty-five (45) day time limit and Plaintiff cannot sustain any claims based on alleged discriminatory conduct which occurred during the 2018 polygraph examination.  *See* 29 C.F.R. §1614.105(a)(1); *Morgan*, 536 U.S. at 1.

### D.    Plaintiff's Formal EEO Complaint Did Not Assert a Claim Based on National Origin (Counts I and IV)

Even if Plaintiff could assert claims based on his September 2014 or August 2018 polygraph examinations – which he cannot – Plaintiff could still not assert any claim based on national origin discrimination because he has failed to exhaust his administrative remedies with respect to such claims.  In Plaintiff's Formal EEO Complaint, he alleged that he was discriminated against in April 2018 based on his race and alleged physical disability only.  *See* ECF 8-1 at 1.  In contrast, Plaintiff now alleges in Counts I and IV of the PFAC that he was subject to discrimination based on his national origin (Counts I and IV).  *See* ECF 12-2 ¶¶ 108-

127; 149-157.  Plaintiff's Formal EEO Complaint makes no mention of alleged national origin discrimination and it included no allegations to support such a claim.  Because Plaintiff did not assert any claim of national origin discrimination, he cannot now assert such a claim in this Court.  *See, e.g.*, *Lane v. Hilbert*, Civ. A. No. 03-5309, 2004 WL 1071330, at *1 (D.C. Cir. May 12, 2004) (affirming dismissal of complaint on exhaustion grounds because district court complaint alleged sex discrimination and sexual harassment while administrative complaint alleged racial discrimination and hostile work environment); *Rogers v. Smithsonian Inst.*, 305 F. Supp. 3d 89, 96 (D.D.C. 2018) (dismissing plaintiff's racial discrimination claims for failure to state a claim because such claims were not included in the plaintiff's formal EEO complaints); *Bowe-Connor*, 923 F. Supp. 2d at 7 (dismissing national origin claim on exhaustion grounds because not raised in plaintiff's EEO complaint); *Nyunt v. Tomlinson*, 543 F. Supp. 2d 25, 35 (D.D.C. 2008) (dismissing racial discrimination claim on exhaustion grounds because complainant only made a claim of national origin discrimination in administrative complaint).

### E.  Only the Head of the Agency is Proper Defendant for Title VII Claims.

Even if the PFAC stated any claims under Title VII that were properly exhausted, it is clear that the new Title VII claims proposed to be brought against Defendants SA Smiedala and Ms. Santangelo would still need to be dismissed because only the head of the agency is a proper defendant under Title VII.  *See* 42 U.S.C. § 2000e-16(c); *Davis v. California*, 613 F.2d 957, 958 n.1 (D.C. Cir. 1980); *Webster v. Spencer*, 318 F. Supp. 3d 313, 317 (D.D.C. 2018).  Because neither SA Smiedala nor Ms. Santangelo are the head of the agency, any remaining Title VII claims against them must be dismissed as to them.

## II.   Constitutional Claims Against the United States (Counts VI – VII)

Plaintiff's PFAC seeks to assert two new claims against the United States arising directly under the United States Constitution:  a claim for a "Fifth Amendment Violation of Due Process" (Count VI) and a claim for a "Fifth Amendment Violation of Equal Protection" (Count VI).  *See* ECF No. 12-2 ¶¶ 167-183.  He appears to seek money damages and injunctive relief pursuant to both claims.  *See id.* at 27, ¶¶ 180, 183.  But, Plaintiff's proposed Counts VI and VII are barred by the doctrines of sovereign immunity and Title VII exclusivity, and fail to allege a protected liberty interest.  Because neither claim, regardless of the relief sought, could withstand a motion to dismiss, Plaintiff's request to add these claims should be denied as futile.

Plaintiff's attempt to state a constitutional claim against the United States for money damages is a non-starter.  The United States, as sovereign, is immune to claims for money damages unless that immunity has been waived.  *See, e.g.*, *Sullivan v. Cent. Intelligence Agency*, No. CV 07-0685 (RWR), 2009 WL 10717426, at *2 (D.D.C. Mar. 6, 2009); *Ranger v. Tenet*, 274 F. Supp. 2d 1, 5-6 (D.D.C. 2003).  Plaintiff has failed to point to any authority demonstrating that the United States has waived its immunity for the type of constitutional claims presented here.  Permitting Plaintiff to add his proposed claims for money damages against the United States would therefore be fruitless, for the court would lack jurisdiction to hear his claims.  *See Brown v. Sec'y of Army*, 78 F.3d 645, 648 (D.C. Cir. 1996); *Dye v. United States*, 516 F. Supp. 2d 61, 70-71 (D.D.C. 2007) ("Plaintiffs' constitutional damages claims against the United States are dismissed for lack of subject matter jurisdiction . . .").

Plaintiff's proposed Counts VI and VII as they relate to injunctive relief fare no better. Through Count VII, Plaintiff seeks to assert an equal protection claim against the United States. But Title VII provides the exclusive remedy for claims of workplace discrimination and

retaliation.  *See Brown v. General Services Administration*, 425 U.S. 820, 828-29 (1976)

(observing that the purpose of Title VII was to create an the "exclusive, preemptive

administrative and judicial scheme for the redress of federal employment discrimination.");

*Ethnic Employees of Library of Congress v. Boorstin*, 751 F.2d 1405, 1415 (D.C. Cir. 1985);

*Kizas v. Webster*, 707 F.2d 524, 542 (D.C. Cir. 1983) (holding that FBI complainants' argument

that "they may pursue, additionally or alternately, a claim directly under the fifth amendment"

despite coverage under Title VII is "unavoidably foreclosed by precedent.").  This exclusivity

covers constitutional, statutory, and common law claims, and is determined not by the labels

attached by plaintiff's pleadings but by the underlying conduct alleged.  *See Coulibaly v. Kerry*,

213 F. Supp. 3d 93, 131-32 (D.D.C. 2016); *King v. Holder*, 941 F. Supp. 2d 83, 92 (D.D.C.

2013) (explaining that Title VII preempts "both [federal] constitutional claims and common law

tort claims arising out of the same conduct that forms the basis for a plaintiff's Title VII claim").

Here, Plaintiff merely seeks to recast his Title VII discrimination claim as a constitutional

equal protection claim and bring suit for employment discrimination directly under the

Constitution rather than under Title VII.  The underlying conduct for Plaintiff's newly proposed

Count VII clearly overlaps with his Title VII claims; he does not allege an entirely new action,

but instead only new legal theories and additional factual details about the existing claims.  *See,

e.g.*, ECF 12-3 ¶¶ 62-67 (new factual details about existing claims); ECF No. 12-3 ¶¶ 167-

183 (new legal theories).  Because Title VII provides an exclusive remedy, allowing Plaintiff to

amend his Complaint to add this claim would be futile and should be denied.

Through Count VI—Plaintiff's "Fifth Amendment Due Process" claim—Plaintiff alleges

a violation of his liberty interest in securing his reputation.  Although such a claim—the remedy

for which is a name-clearing hearing—is cognizable under certain circumstances, *see, e.g.*

*McCormick v. District of Columbia*, 752 F.3d 980, 987-89 (D.C. Cir. 2014) (citing *Codd v. Velger*, 429 U.S. 624, 627 (1977); *O'Donnell v. Barry*, 148 F.3d 1126, 1139-42 (D.C. Cir. 1998), it is not cognizable here, because Plaintiff has failed to allege a protected liberty interest.

      To state a claim for deprivation of a liberty interest without due process, a plaintiff must allege a protected liberty interest.  An individual "does not have a liberty interest in a security clearance," *Peter B. v. Cent. Intelligence Agency*, 174 F. Supp. 3d 308, 318 (D.D.C. 2016) (citing *Jones v. Dep't of Navy*, 978 F.2d 1223, 1226 (Fed. Cir. 1992)), which is bestowed at the discretion of the Executive Branch, *see Dep't of the Navy v. Egan*, 484 U.S. 518, 528 (1988).  Rather, an employee's liberty interest "centers on his concern for his reputation and good name." *Jones*, 978 F.2d at 1226.  This is not coextensive with a clearance, for a clearance "does not equate with passing judgment upon an individual's character."  *Id.* (quoting *Egan*, 484 U.S. at 528).

      Although Plaintiff's PFAC identifies the interest at stake as "securing [Plaintiff's] reputation," ECF No. 12-2 ¶ 168, this claim is belied by his proposed pleading.  The PFAC asserts "Plaintiff was not terminated because he was dishonest, deceitful, a Chinese spy or for any other reason." *Id.* ¶ 176.  Nor does Plaintiff allege that his clearance was terminated because the United States falsely identified him as such.[1]  Instead, Plaintiff alleges that he was "ultimately terminated because he failed a polygraph and the ARC didn't overturn the decision in 2018." ECF No. 12-2 ¶ 175.  To the extent that the PFAC expresses a concern about Plaintiff's reputation, that concern is derived from Plaintiff's anticipation of the effect that a loss of his security clearance has had or will have on his reputation.  *See generally id.*  But because an

---

[1] *See generally* ECF No. 12-2; *see also* ECF No. 12-1 at 6 (alleging that the ARC letter concluded that use of countermeasures or deception were *not* conclusive, and that he FBI did *no investigation* as to whether Plaintiff is "the leader of [a] Chinese spy ring").

individual's clearance status "does not equate with passing judgment on an individual's character," *Egan*, 484 U.S. at 528,[2] Plaintiff has failed to plead the denial of a protected liberty interest and, consequently, permitting amendment to add Count VI of the PFAC would be futile.

### III.   Plaintiff is Barred by Egan from Challenging His Security Clearance Revocation.

Plaintiff alleges that due to discriminatory actions taken by the polygraph examiners his security clearance was revoked and, ultimately, his employment with the FBI was terminated, *see* ECF. No. 1 at 4-8; however, Plaintiff is unable to assert claims under Title VII based on the revocation of his security clearance because "Title VII does not authorize review of security clearance decisions made by the Executive, even when discrimination is alleged." *Gill v. U.S. Dep't of Justice*, No. CV 15-824, 2016 WL 3982450, at *4 (D.D.C. July 22, 2016).  *See generally Dep't of Navy v. Egan*, 484 U.S. 518 (1988).  This is because "[s]ecurity clearance decisions 'must be made by those with the necessary expertise in protecting classified information.'"  *Id.* (quoting *Egan*, 484 U.S. at 529).  "The agency that is responsible for an individual must have the discretion to determine if [he] should have access to classified information in the agency, as it is the agency that bear[s] the responsibility for the protection of classified information committed to his custody."  *Id.*  Therefore, "no one has a 'right' to a security clearance," instead "[t]he grant of a clearance requires an affirmative act of discretion on the part of the granting official."  *Egan*, 484 U.S. at 528.

Relying on *Egan*, the United States Court of Appeals for the D.C. Circuit has held that "[b]ecause the authority to issue a security clearance is a discretionary function of the Executive Branch and involves the complex area of foreign relations and national security, employment

---

[2] *Cf. Molerio v. FBI*, 749 F.2d 815, 824 (D.C. Cir. 1984) (explaining that while receiving "a 'top secret' clearance is assuredly a badge of loyalty; . . . to be denied it on unspecified grounds in no way implies disloyalty or any other repugnant characteristic.").

actions based on denial of security clearance are not subject to judicial review, including under Title VII." *Bennett v. Chertoff*, 425 F.3d 999, 1001 (D.C. Cir. 2005). *See also Oryszak v. Sullivan*, 576 F.3d 522, 526 (D.C. Cir. 2009) (Ginsberg, J., concurring) ("We have held that actions based upon [a] denial of security clearance[s] . . . are beyond the reach of judicial review.") (citations omitted). "This is true even if the employee claims, under Title VII, that the security clearance decision was racially motivated." *Thomas v. Johnson*, 4 F. Supp. 3d 157, 160 (D.D.C. 2014). *See also Ryan v. Reno*, 168 F.3d 520, 524 (D.C. Cir. 1999) ("[A]n adverse employment action based on denial or revocation of a security clearance is not actionable under Title VII.").

In his PFAC, Plaintiff continues to assert claims under Title VII alleging that the examiners' purported conduct during the September 2014 polygraph examination "proximately caused" the termination of his employment with the FBI. Mot. Amd. (ECF No. 12-1) at 5. Thus, he still alleges that the adverse employment action by the FBI was directly predicated on an unfavorable security clearance determination. *See also* PFAC ¶¶ 110, 169. The FBI has broad discretion in determining whether Plaintiff should have access to classified information in its possession, and courts may not second-guess such decisions. *See Bennett*, 425 F.3d at 1001. Accordingly, Plaintiff's claims under Title VII based on the revocation of his security clearance are not subject to judicial review and his Title VII claims should be dismissed. *See Gill*, Civ. A. No. 15-0824, 2016 WL 3982450, at *4 (noting dismissal of discrimination claims would be appropriate under Title VII because the statute does not authorize review of security clearance decisions); *Bennett*, 425 F.3d at 1004 (affirming dismissal of plaintiff's Title VII claims because the court could not review agency's security clearance determination).

In his motion to amend his complaint, Plaintiff argues that his new constitutional claims escape the reach of *Egan*.  ECF No. 12-1 at 5.  This effectively concedes that *Egan* does in fact bar his claims under Title VII.  Moreover, it is clear that his PFAC is merely a repackaging of his employment in constitutional terms in order to evade *Egan* (as well as the exclusivity of Title VII for workplace discrimination claims, per *Brown*, discussed above).  The Court should reject this attempt to circumvent *Egan*.

The PFAC seeks exactly the same relief as his original complaint, with the only addition being "a *Codd* hearing to clear his name."  ECF No. 12-3 at 28.  Such a hearing would add little to relief originally requested which would already establish the validity of his claims.  Inevitably, the same *Egan* problems would remain squarely at issue because he seeks to be returned to his prior position (ECF No. 12-3 at 28) which necessarily means restoration of his security clearance.  That plaintiff now purportedly seeks this relief under the Constitution rather than Title VII does not alter the facts that "the authority to issue a security clearance is a discretionary function of the Executive Branch and involves the complex area of foreign relations and national security" and this Court lacks the competence to countermand Executive Branch judgments in this area.  *Bennett*, 425 F.3d at 1001.  Adjudication of Plaintiff's allegations of misjudgments and incorrect assessments would require the Court to second guess the security assessments that *Egan* instructs are not for the courts to make.  Because adjudication of the merits of plaintiff's claims—no matter how they are labeled—is outside the competence of the judicial branch, such review should be denied.

The D.C. Circuit has rejected attempts to evade *Egan* by adding constitutional claims.  *See, e.g., Palmieri v. United States*, 896 F.3d 579, 585 (D.C. Cir. 2018).  Other circuits have ruled similarly that *Egan* bars judicial review of claims challenging security clearance

determinations because any inquiry into an agency's reasons for revoking plaintiff's clearance "would of necessity require some judicial scrutiny of the merits of the revocation decision." *Perez v. FBI*, 71 F.3d 513, 514 (5th Cir. 1995); *Brazil v. U.S. Dept. of Navy*, 66 F.3d 193, 197-98 (9th Cir. 1995) (where Egan barred plaintiff's Title VII claim, he could not recover under a *Bivens*-type equal protection claim because Title VII provided the exclusive remedy); *see also Hegab v. Long*, 716 F.3d 790, 795 (4th Cir. 2013) (Administrative Procedure Act claim); *El-Ganayni v. U.S. Dep't of Energy*, 591 F.3d 176, 185 (3d Cir. 2010) (holding that *Egan* bars First Amendment retaliation claims); *Hall v. U.S. Dep't of Labor, Admin. Review Bd.*, 476 F.3d 847, 852-53 (10th Cir. 2007); *Dorfmont v. Brown*, 913 F.2d 1399, 1401 (9th Cir. 1990) (holding that *Egan* bars due process claims that were essentially "attacks on the merits" of the revocation decision).

Plaintiff's reliance on *National Fed'n of Fed. Employees v. Greenberg*, 983 F.2d 286, 290 (D.C. Cir. 1993) is misplaced. The decision did not involve workplace discrimination claims, and so it does not address the Title VII exclusivity under *Brown v. GSA* discussed above. Moreover, the case involved *facial* challenges to the use of a questionnaire in the security clearance process (which were ultimately rejected on the merits). *See id.* It thus does not answer the problem presented by Plaintiff's PFAC which requires the Court to second guess an individualized, discretionary security clearance decision and so still creates the core *Egan* problems, per *Palmieri* and similar cases.

## IV.   *Bivens* Claims (Counts VIII – XI)

The remaining counts of Plaintiff's PFAC seek to assert claims against SA Smiedala and Ms. Santangelo in their individual capacities, pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). Permitting amendment to allow these claims would be

futile because no *Bivens* remedy exists for the constitutional violations Plaintiff alleges.

In *Bivens*, the Supreme Court established an implied remedy for money damages against "federal officers who violated the [Fourth Amendment] prohibition against unreasonable search and seizures." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017) (citing *Bivens*, 403 U.S. at 397). The Supreme Court later recognized an implied cause of action in only two other constitutional contexts, neither of which are analogous to this case. *See Davis v. Passman*, 442 U.S. 228, 248-49 (1979) (recognizing an implied damages claim against a Congressman under the Fifth Amendment Due Process Clause for gender-discriminatory firing); *Carlson v. Green*, 446 U.S. 14, 19, 23 (1980) (recognizing an implied damages claim under the Eighth Amendment Cruel and Unusual Punishments Clause for failure to provide adequate medical treatment). Since then, the Supreme Court has made clear that expanding the *Bivens* remedy is a "disfavored judicial activity." *Abassi*, 137 S. Ct. at 1857 (internal citations omitted).

*Abbasi* established a two-step test for determining when a *Bivens* remedy exists. Before recognizing a *Bivens* remedy a court must analyze (1) whether the claim arises in a new context; and (2) whether special factors counsel against implying a damages remedy. *Abbasi*, 137 S. Ct. at 1859-60. If a case presents a new context—that is, if it implicates a new constitutional right or is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court],"—a court may recognize a remedy in the absence of affirmative action by Congress only if there are no special factors counselling hesitation. *Id.* at 1857. Such special factors include the existence of alternative process or method of relief. *Id.* at 1857-59, 1863. Indeed, "the existence of alternative remedies usually precludes a court from authorizing a *Bivens* action." *Id.* at 1865; *see also Correctional Services Corp. v. Malesko*, 534 U.S. 61, 69 (2001). In the absence of an alternative process, "a *Bivens* remedy is a subject of judgment." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). "If there are sound reasons to think Congress

20

might doubt the efficacy or necessity of a damages remedy . . . the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III." *Abbasi*, 137 S. Ct. at 1858.

All of Plaintiff's newly asserted *Bivens* claims present a new context; proposed Count VIII (First Amendment claim) implicates a constitutional right for which the Supreme Court has never recognized a *Bivens* remedy and Counts IX, X and XI (Fifth Amendment claims) clearly do not present the type of claim permitted in *Davis*. Precedent and Congressional action foreclose any argument that the judicial creation of a damage remedy is appropriate for these new contexts. Even before *Abbasi*, the Supreme Court and the D.C. Circuit, citing the Civil Service Reform Act of 1978 (CSRA), 5 U.S.C. § 1101 et seq., both declined to recognize a *Bivens* remedy for alleged First Amendment violations by federal employers. *See Wilkie*, 551 U.S. at 550 (*citing Bush v. Lucas*, 462 U.S. 367 (1983) ("We have accordingly held against applying the *Bivens* model to claims of First Amendment violations by federal employers"); *Bush*, 462 U.S. at 385-90; *Davis v. Billington*, 681 F.3d 377, 381-383 (D.C. Cir. 2012) (hereinafter "*Billington*"). Moreover, the D.C. Circuit has similarly refused to expand *Bivens* to provide a remedy for an adverse employment action under the Fifth Amendment arising from an employee's criticism of government policies. *Billington*, 681 F.3d at 381, 386, 388 (holding that the CSRA is "a comprehensive system to administer public rights," through which "Congress has made an informed judgment about which remedies should be available to particular classes of civil-service employees.").

Since *Abassi*, nothing has changed to minimize the CSRA's preclusive effect on a *Bivens* remedy in this context. Indeed, the CSRA provides precisely the type of "alternative, existing process" that counsels against "providing a new and freestanding remedy in damages."

*Wilkie*, 551 U.S. at 550; *Abbasi*, 137 S. Ct. at 1858.  Through it, "certain federal employees may

obtain judicial review of specified adverse employment actions."  *Elgin v. Dep't of the Treasury*,

567 U.S. 1, 5 (2012).  Its procedural and substantive provisions are comprehensive.  *Bush*, 462

U.S. at 368.  Even where the CSRA's terms omit remedies for certain claimants or do not

provide relief for the specific harm alleged, its existence counsels judicial abstention.  *See*

*Spagnola v. Matthis*, 859 F.2d 223, 226-30 (D.C. Cir. 1988) (en banc).  As such, the case law

overwhelmingly rejects finding a *Bivens* remedy for workplace discrimination or

retaliation.  *See, e.g.*, *Spagnola v. Mathis*, 859 F.2d at 223, 227-229 (D.C. Cir. 1988) (en banc)

(holding that "special factors," among which are the CSRA, preclude *Bivens* remedies for civil

service employees and applicants who advance constitutional challenges to personnel

decisions); *Wilson v. Libby*, 535 F.3d 697, 705-06 (D.C. Cir. 2008) (observing that the D.C.

Circuit has found in the CSRA and Title VII "comprehensive remedial schemes" counseling

against recognizing a *Bivens* remedy); *Webster v. Spencer*, 318 F. Supp. 3d 313, 320 (D.D.C.

2018) (declining to recognize a *Bivens* remedy, concluding that Title VII is a comprehensive

scheme designed to address discrimination and retaliation in federal employment)).

     Here, Plaintiff's proposed Counts VIII-XI, concern personnel decisions and alleged

discrimination arising from the actions of SA Smiedala, and Ms. Santangelo.  *See, e.g.*, ECF No.

12-1 at ¶¶ 74, 103, 107, 175, 197, 200, 204, 206-08.  Precedent and the comprehensive remedial

schemes set out by the CSRA and Title VII for addressing such actions unquestionably disfavors

recognizing a *Bivens* remedy here.  Moreover, an alternative remedial scheme aside, other

special factors likewise counsel against recognizing Plaintiff's proposed *Bivens* claims.

Recognizing a *Bivens* remedy here would interfere with the executive branch's discretion to

grant, withhold, or rescind security clearances, *see Egan*, 484 U.S. at 528, and through it

undermine the executive branch's ability to control the dissemination of national security information.  It would risk overwhelming executive employees and agencies with *Bivens* actions, thereby affecting their ability to perform their duties.  Polygraphers, specifically, would risk subjecting themselves to liability each time they noted an abnormality in an examination, while the accompanying threat of liability would likely impact the administration of polygraph examinations and the interpretation of results.  For precisely these reasons, the Supreme Court has recognized that in this realm, deference should be shown to the executive.  *Id.* at 530 (acknowledging that, with respect to employees in sensitive positions, "an agency head who must bear the responsibility for the protection of classified information committed to his custody should have the final say in deciding" in whom to repose his trust).  Thus, even if Congressional action does not foreclose Plaintiff's claim—which it should—implying a *Bivens* remedy here would still be improper.  Absent a remedy, permitting Plaintiff to amend his complaint and drag into federal court individual employees acting in the service of the Executive, and thereby subjecting them to all the burdens and expenses that involves, would be improper and should be prohibited.

*   *   *

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's leave to amend as futile and dismiss the case.  If the Court permits the PFAC to be filed, Defendants reserve their right to move to dismiss on all colorable grounds, including but not limited to the arguments raised herein.

Dated: April 29, 2020                    Respectfully submitted,

TIMOTHY J. SHEA, D.C. Bar #437437
United States Attorney for the District of Columbia

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

 /s/ *Alan Burch*
ALAN BURCH, D.C. Bar #470655
Assistant United States Attorney
United States Attorney's Office, Civil Division
555 Fourth St., NW
Washington, DC 20530
(202) 252-2550, alan.burch@usdoj.gov

*Counsel for Defendants*