UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JASON B. LEE,<br><br>　　　　　*Plaintiff*,<br><br>　　v.<br><br>WILLIAM P. BARR,<br><br>　　　　　*Defendant.* | No. 19-cv-2284 (DLF) |

## **MEMORANDUM OPINION**

Plaintiff Jason B. Lee brings this case against the U.S. Attorney General, William P. Barr, alleging that the U.S. Department of Justice violated Title VII by discriminating against him based on his race and national origin. *See* Compl., Dkt. 1. Before the Court is the Attorney General's Motion to Dismiss, Dkt. 6, and Lee's Motion to Amend his complaint pursuant to Federal Rule of Civil Procedure 15(a)(2), Dkt. 12. For the reasons that follow, the Court will grant the Attorney General's motion and deny Lee's motion.

**I.　BACKGROUND**

　　**A.　The Complaint**

Lee, a U.S. citizen of Chinese ancestry, began working for the FBI in 2003 and most recently worked as a Senior Intelligence Officer at its Technical Intelligence Directors Office in Washington, D.C. Compl. ¶¶ 5, 15, 18. In that role, he held a top secret security clearance. *Id*. ¶ 17. As part of the security clearance investigative process, Lee took his first polygraph exam in 2003. *Id*. ¶¶ 27–28. He underwent a second polygraph in 2008 during his "periodic renewal investigation." *Id*. ¶ 29. In July 2013, the FBI's Security Division contacted him to schedule his "ten-year routine periodic polygraph exam." *Id*. ¶ 34. Kevin McCaskey conducted Lee's

polygraph exam in September 2013. *Id.* ¶¶ 34–35. McCaskey allegedly told Lee that "there were problems repeatedly arising in his response to three questions relating to the unauthorized release of information, terrorism and failure to disclose a security violation;" McCaskey also "accused [Lee] of lying to him and trying to conceal relevant information from him." *Id.* ¶¶ 36–37. Lee further alleges that McCaskey's "demeanor and attitude" appeared to "be one of bias and antagonism" because of Lee's Chinese ancestry. *Id.* ¶ 39. According to Lee, McCaskey demanded that Lee provide a written statement explaining his "failure and refused to let [Lee] leave until he provided one." *Id.* ¶ 40. Lee "eventually provided a written statement that denied any wrongdoing on his part" and "denied withholding any information or employing any testing counter measures." *Id.* ¶ 41.

In August 2014, the FBI notified Lee that he "needed to take a second polygraph examination" and scheduled it for September 24, 2014. *Id.* ¶ 43. The examiner of this polygraph, Special Agent Shannon,[1] informed Lee "that he had reviewed his file and been briefed on the failed/untruthful results of the 2013 examination." *Id.* ¶ 45. During "pre-test questioning," Shannon "began a series of questioning regarding [Lee's] exposure to environments where others spoke primarily dialects of Chinese," even though Lee told Shannon that he did not speak Chinese. *Id.* ¶¶ 46–47. Shannon suggested that Lee and his father, who also had worked for the U.S. government, were "part of a father and son spy team." *Id.* ¶ 55.

Lee found Shannon's "attitude and demeanor hostile to [him] due to his Chinese ancestry." *Id.* ¶ 48. He alleges that Shannon "chastised" him for reading a report on polygraphs. *Id.* ¶ 49. At some point, Lee had a panic attack during the polygraph test. *Id.* ¶ 56. Eventually, Shannon told Lee that "based on his interpretation of the technical results, he would be failing

---

[1] The plaintiff does not include Shannon's first name in his complaint.

2

him" and that he had determined that Lee used "countermeasures" during the polygraph test. *Id.* ¶ 50. According to Lee, Shannon told him that "having greater number of breaths after answering a given question can only be explained by one cause, an attempt to cheat the examination." *Id.* ¶ 51. Shannon also said that Lee's attempts to counter the test would cause him to lose his badge, and Shannon misleadingly suggested that he had the "sole authority" to confiscate Lee's credentials. *Id.* ¶¶ 57–58. Shannon "demanded" that Lee write a statement explaining that he failed the test and admitting wrongdoing. *Id.* ¶ 59. After Lee wrote this statement, Shannon allegedly crumpled it up and told Lee that unless he rewrote it, the "'people in the back room' will have no choice but to open a counterintelligence investigation" against him. *Id.* ¶¶ 59–60. Lee also alleges that the FBI later submitted his test results to the National Center for Credibility Assessment, which found "no evidence" of "countermeasures." *Id.* ¶¶ 52–53.

On December 31, 2014, Lee received a letter informing him that the FBI was indefinitely suspending his security clearance and placing him on unpaid leave. *Id.* ¶ 62. He claims he "was not afforded an opportunity to appeal this decision" before the suspension was made effective, a violation of the FBI's policy to give an employee a hearing before its Senior Review Panel before taking adverse action against an employee accused of failing a routine polygraph. *Id.* ¶ 63. On February 25, 2015, Lee was informed that the FBI was revoking his security clearance. *Id.* ¶ 66. The Assistant Director of the Security Division denied Lee's appeal of this decision. *Id.* ¶ 67.

Lee filed suit against the Attorney General on July 31, 2019, alleging that the examiners who conducted his 2013 and 2014 polygraph examinations discriminated against him based on his national origin and race, in violation of Title VII. *See id.* ¶¶ 70–91.

### B. The Amended Complaint

On January 6, 2020, after the FBI moved to dismiss Lee's initial complaint, *see* Dkt. 6, Lee filed a motion to amend his complaint, *see* Dkt. 12. In his amended complaint, Lee drops all claims relating to his 2013 polygraph examination, *see* Pl.'s Mot. to Am. Compl. at 2, but he adds nine new claims: three Title VII claims relating to his 2018 polygraph examination; two Fifth Amendment claims; and four *Bivens* claims. See Am. Compl. ¶¶ 137–208, Dkt. 12-2.

The amended complaint also includes additional details about Agent Shannon's allegedly discriminatory behavior during Lee's 2014 polygraph examination, *see* Am. Compl. ¶¶ 62–67, and allegations relating to a 2018 polygraph examination. According to the amended complaint, in 2015, Lee submitted a request for reconsideration of his security clearance revocation, and in August 2016, the FBI affirmed the decision. *See id*. ¶¶ 76–77. That month, Lee appealed the decision to the DOJ's Access Review Committee, and the ARC considered his case in 2018. *Id*. ¶¶ 79–81. The Access Review Committee directed the Drug Enforcement Administration to hold another polygraph examination using the same questions posed to him during the 2014 polygraph. *Id*. ¶ 81.

Agent Stacy Smiedala,[2] who conducted Lee's April 26, 2018 polygraph examination, told Lee that he was aware of his previous "allegations of ethnic bias, bullying practice and procedural rights violations." *Id*. ¶ 86. Smiedala also raised with Lee two articles that concerned "an anonymous complainant regarding experiences with perceived inappropriate polygraph testing practices" and "the FBI singling out" Chinese-Americans by manipulating polygraph tests. *Id*. ¶¶ 87, 90. Lee appears to admit that he participated as an anonymous source in the

---

[2] The amended complaint refers to the agent administering the 2018 polygraph as "Stacy Sabilla," *see* Am. Compl. ¶¶ 9, 84–85, but the defendant represents that this agent's name is Stacy Smiedala, *see* Def.'s Opp'n to Pl.'s Mot. to Amend at 4, Dkt. 18.

4

article. *See id.* ¶ 88.  And he alleges that Smiedala "vocally berated" him for "sullying the reputation" of the agent who conducted the 2014 polygraph.  *Id.* ¶ 93.  On May 30, the Committee sent Lee a letter upholding the results of the 2014 polygraph.  *See* Pl.'s Mot. to Amend Ex. 1, Dkt. 12-4.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

Rule 12(b)(6) allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, the complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  A complaint need not contain "detailed factual allegations," but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility."  *Id.* (internal quotation omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation omitted).  But the assumption of truth does not apply to a "legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (internal quotation omitted).  An "unadorned, the defendant-unlawfully-harmed-me accusation" is not credited; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id.* Ultimately, "[d]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### B. Rule 15(a)(2)

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "a court should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "[w]hen evaluating whether to grant leave to amend, the Court must consider (1) undue delay; (2) prejudice to the opposing party; (3) futility of the amendment; (4) bad faith; and (5) whether the plaintiff has previously amended the complaint." *Howell v. Gray*, 843 F. Supp. 2d 49, 54 (D.D.C. 2012) (citing *Atchinson v. District of Columbia*, 73 F.3d 418 (D.C. Cir. 1996)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). An amendment "is futile and should be denied" when it "would not survive a motion to dismiss—such as where a claim sought to be added is barred by the statute of limitations." *Palacios v. MedStar Health, Inc.*, 298 F. Supp. 3d 87, 90 (D.D.C. 2018); *see, e.g.*, *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996) ("Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss."). This review for futility is functionally "identical to review of a Rule 12(b)(6) dismissal based on the allegations in the amended complaint." *In re Interbank Funding Corp. Secs. Litig.*, 629 F.3d 213, 216 (D.C. Cir. 2010) (internal quotation marks and citations omitted). Thus, when assessing a motion for leave to amend, "the Court is required to assume the truth of the allegations in the amended complaint and construe them in the light most favorable to the movant." *Flaherty v. Pritzker*, 322 F.R.D. 44, 46 (D.D.C. 2017) (citing *Caribbean Broad. Sys. v. Cable & Wireless PLC*, 148 F.3d 1080, 1086 (D.C. Cir. 1998)).

The party opposing amendment "bears the burden of showing why an amendment should not be allowed." *Abdullah v. Washington*, 530 F. Supp. 2d 112, 115 (D.D.C. 2008).

## III. ANALYSIS

### A. Motion to Dismiss

"Title VII complainants must timely exhaust their administrative remedies before bringing their claims to court." *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) (internal quotation marks and alterations omitted); *see also* 42 U.S.C. § 2000e-16(c). The exhaustion requirement "serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision," *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (internal quotation marks and alteration omitted), and it "ensure[s] that the federal courts are burdened only when reasonably necessary," *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985). In the Title VII context, failure to exhaust is an affirmative defense, and thus "the defendant bears the burden of pleading and proving it." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997); *see also Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998) ("[A]n affirmative defense may be raised by pre-answer motion under Rule 12(b) when the facts that give rise to the defense are clear from the face of the complaint.").

Pursuant to Title VII, the EEOC has promulgated detailed procedures for the administrative resolution of employment discrimination claims against federal agencies. *See* 42 U.S.C. § 2000e-16(b); 29 C.F.R. § 1614.105. Employees who believe they have been discriminated against must initiate contact with an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1).

For purposes of assessing whether a Title VII complainant exhausted these administrative procedures in a timely fashion, the Supreme Court has identified two categories of

discrimination—those involving "discrete retaliatory or discriminatory acts" and those involving a hostile work environment. *See Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 175 (D.D.C. 2016). Where, as here, an employee alleges that he or she was the victim of a "discrete retaliatory or discriminatory act," the timeliness inquiry focuses on that particular act. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002); *Achagzai*, 170 F. Supp. 3d at 175. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113.

In his initial complaint, Lee appears to allege that, due to the polygraph examiners' conduct during the 2013 and 2014 polygraphs, he failed the exams and subsequently had his security clearance revoked, *see id.* ¶¶ 71–72. He thus alleges two discrete discriminatory acts: Agent McCaskey's "demeanor and attitude" toward him during the September 2013 polygraph, *see id.* ¶ 39, and Agent Shannon's "attitude and demeanor" toward him during the September 2014 polygraph, *see id.* ¶ 48.

Lee failed to contact an EEO counselor within 45 days of either of these allegedly discriminatory acts. In fact, he did not contact an EEO counselor until June 14, 2018, almost four years after the 2014 polygraph examination. *See* Def.'s Mot. Ex. 1, Dkt. 8-1. He has thus failed to exhaust his administrative remedies with respect to the alleged 2013 and 2014 discrimination, and the court will dismiss these claims.

### B. Motion to Amend

The Court will also deny Lee's motion for leave to file an amended complaint because Lee has offered no justification for his delay in seeking to amend the complaint and any such amendment would be futile. *See Palacios*, 298 F. Supp. 3d at 90. An amendment is futile if, among other reasons, the amended pleading could not withstand a motion to dismiss. *Id.* Lee's

additional claims and allegations could not withstand a motion to dismiss, so his motion to amend his complaint will be denied.

        1.     *Title VII Claims*

Lee alleges three new Title VII claims relating to his 2018 polygraph examination: (1) that Smiedala acted in a discriminatory manner during the 2018 polygraph as retaliation against Lee for complaining about the alleged discrimination during his 2014 polygraph, *see* Am. Compl. ¶¶ 137–48; (2) that Smiedala discriminated against Lee based on his national origin during the 2018 polygraph, *see id.* ¶¶ 149–57; and (3) that Smiedala discriminated against Lee based on race during the 2018 polygraph, *see id.* ¶¶ 158–66.

If the Court granted Lee leave to amend his complaint, his Title VII claims relating to his 2018 polygraph examination would also fail because Lee did not contact an EEO counselor within 45 days of the polygraph. *See* 29 C.F.R. § 1614.105(a)(1). Lee took his polygraph test on April 26, 2018. Am. Compl. ¶ 84. But he did not contact an EEO counselor until June 14, 2018, 49 days after the polygraph. *See* Def.'s Mot. Ex. 1. Indeed, the EEOC originally dismissed Lee's EEOC complaint relating to his 2018 polygraph for this very reason. *See* Def.'s Mot. Ex. 2 at 1–3, Dkt. 8-2. Because Lee failed to timely exhaust his administrative remedies, his newly alleged Title VII claims would be dismissed, and it would be futile for Lee to pursue these claims.[3]

---

[3] The FBI also argues that because Lee is, in essence, challenging the FBI's decision to revoke his security clearance, his claim is barred by *Dep't of Navy v. Egan*, 484 U.S. 518 (1988), which held that a court cannot review security clearance decisions made by the Executive. *See id.* at 529. However, *Egan* does not bar all constitutional challenges to security clearance decisions, *see Webster v. Doe*, 486 U.S. 592 (1988), nor does it necessarily bar challenges to the methods used in security clearance decisions, *see Nat'l Fed'n of Fed. Empls. v. Greenberg*, 983 F.2d 286, 290 (D.C. Cir. 1993).

2.   *Constitutional Claims*

Lee also brings two Fifth Amendment claims: one alleging that the FBI deprived him of a liberty interest in his reputation, in violation of the Due Process Clause, *see* Am. Compl. ¶¶ 167–80; and one alleging that the FBI violated the Equal Protection guarantee of the Due Process Clause, *see id*. ¶¶ 181–83.

Title VII is the "exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." *See Brown v. Gen. Servs. Admin*., 425 U.S. 820, 829 (1976). Because federal employees may not "circumvent the careful and thorough remedial scheme" Congress ordered for them, they are precluded from bringing employment discrimination claims against federal officials for constitutional violations. *Kizas v. Webster*, 707 F.2d 524, 542–43 (D.C. Cir. 1983) (citing *Brown*, 707 F.2d at 833). This includes constitutional claims arising from "the same conduct that forms the basis for a plaintiff's Title VII claim." *King v. Holder*, 941 F. Supp. 2d 83, 92 (D.D.C. 2013).

Lee's constitutional claims rest on the same conduct as his Title VII claims. As to the equal protection claim, Lee asserts in a conclusory fashion that he "was not provided Equal Protection under the law." *See* Am. Compl. ¶ 182. For his Due Process Clause claim, he alleges that he has been deprived of his liberty interest in his reputation because he has to explain the loss of his security clearance to future employers, *id*. ¶ 168, and that the defendants "proximately caused" this "on the basis of pretextual and untrue statements regarding [Lee's] alleged deception" during the 2014 and 2018 polygraphs, *id*. ¶ 169. At bottom, Lee complains that the same conduct underlying his Title VII claims—the agents' alleged discriminatory behavior during the polygraph examinations—caused the damage to his reputation. These allegations of

employment discrimination are only actionable under Title VII.  Lee's constitutional claims are thus precluded and would not survive a motion to dismiss.

        3.     *Bivens Claims*

Lee alleges four claims under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), which recognized an implied cause of action for damages against federal officers alleged to have violated certain constitutional rights.  *Id.*  He claims that: (1) Smiedala violated his First Amendment rights by retaliating against him for his quotations in the articles, *see* Am. Compl. ¶¶ 184–97; (2) Smiedala violated his Fifth Amendment equal protection guarantee during the 2018 polygraph, *see id.* ¶¶ 198–200; (3) Smiedala violated his Fifth Amendment Due Process Clause rights during the 2018 polygraph, *see id.* ¶¶ 201–04; and (4) Marie Barr Santangelo, the employee who signed the Access Review Committee's 2018 letter affirming the revocation of his security clearance, violated his Fifth Amendment Due Process Clause rights, *see id.* ¶¶ 205–08.

The Supreme Court recently outlined the proper two-step approach to determining whether a cause of action exists under the Constitution itself for damages for constitutional violations.  *Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017).  First, a court should ask whether the claim arises in a new context.  A case "presents a new *Bivens* context" if it "is different in a meaningful way from previous *Bivens* cases decided by this Court."  *Id*. at 1859.  Second, it should ask whether there are "special factors counselling hesitation in the absence of affirmative action by Congress."  *Id*. at 1857.  "[T]he decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide," including "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal system are used

to bring about the proper formulation and implementation of public policies." *Id*. at 1858. Further, "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id*. Although *Bivens* remains settled "in the search-and-seizure context in which it arose," the Court "has made clear that expanding the *Bivens* remedy is now a disfavored judicial activity." *Id*. at 1856–57 (internal quotation marks omitted).

Lee's First Amendment *Bivens* claim fails in light of established precedent. The Supreme Court has never held that a *Bivens* remedy is available for First Amendment claims. In fact, both the Supreme Court and the D.C. Circuit have held that federal employees cannot bring a *Bivens* action against their employers for First Amendment violations. *See Bush v. Lucas*, 462 U.S. 367, 368 (1983); *Davis v. Billington*, 681 F.3d 377, 388 (D.C. Cir. 2012). Lee relies on *Pinson v. U.S. Dep't of Justice*, 246 F. Supp. 3d 211, 218 (D.D.C. 2017), which permitted *Bivens* claims for First Amendment retaliation, but *Pinson* predated *Ziglar*, and since *Ziglar*, this Circuit has declined to extend *Bivens* to the First Amendment context, *see Loumiet v. United States*, 948 F.3d 376, 382 (D.C. Cir. 2020). Lee's First Amendment *Bivens* claims would therefore not survive a motion to dismiss.

Lee's Fifth Amendment *Bivens* claims involve new contexts and implicate "special concerns counselling hesitation." Even though the Fifth Amendment is one of the three instances in which the Supreme Court has permitted a *Bivens* remedy, *see Davis v. Passman*, 442 U.S. 228 (1979), the *Ziglar* Court warned that "[e]ven though the right and the mechanism of injury [are] the same . . . the contexts [may still be] different," *see Ziglar*, 137 S.Ct. at 1859. And the facts of *Davis* differ from those here. *Davis* involved a sex-discrimination claim against a Congressman who was protected by the Speech or Debate Clause. *Davis,* 442 U.S. at 248–49.

Here, Lee challenges a different set of facts—the conduct of FBI agents in administering a polygraph and revoking a security clearance. *See Barker v. Conroy*, 282 F. Supp. 3d 346, 367 (D.D.C. 2017), *aff'd*, 921 F.3d 1118 (D.C. Cir. 2019) (distinguishing a Fifth Amendment *Bivens* claim from *Davis* based on different facts). Further, Title VII provides an "alternative remedial structure" for Lee's employment discrimination claims, and this alone can suffice to preclude a *Bivens* claim. *See Ziglar*, 137 S.Ct. at 1858. Lastly, the national security concerns at play caution against extending *Bivens* to Lee's claims. Security clearances "require[] an affirmative act of discretion" from an executive branch official. *See Dep't of Navy v. Egan*, 484 U.S. 518, 528 (1988). Given that "separation-of-powers principles are or should be central to the [*Bivens*] analysis," *Ziglar*, 137 S.Ct. at 1857, the Court declines to imply a judicially-created remedy that could interfere with this important executive branch function. Lee's Fifth Amendment *Bivens* claims would also fail to survive a motion to dismiss. Accordingly, amending the complaint to include the *Bivens* claims would also be futile.

## CONCLUSION

For the foregoing reasons, the Court grants the Attorney General's Motion to Dismiss and denies Lee's Motion to Amend his Complaint. A separate order consistent with this decision accompanies this Memorandum Opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

June 23, 2020